**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**LISA A. COLER,**

            **Plaintiff,**

    **v.**                           **Civil Action 2:18-cv-184**
                                        **Judge Michael H. Watson**
                                        **Magistrate Judge Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

            **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Lisa A. Coler, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff filed her application for SSI on August 20, 2014, alleging that she was disabled beginning April 12, 2013. (Tr. 216–24, PAGEID #: 254–62). The Administrative Law Judge (the "ALJ") held the hearing on May 2, 2017, after her application was denied initially and on reconsideration. (Tr. 132–38, PAGEID #: 170–76; Tr. 142–46; PAGEID #: 180–84). On June 22, 2017, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 12–28, PAGEID #: 50–66). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6, PAGEID #: 39–44).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on March 2, 2018. (Doc. 1). Plaintiff filed her Statement of Errors on July 23, 2018 (Doc. 11), Defendant

filed an Opposition on August 30, 2018 (Doc. 12), and Plaintiff did not file a Reply. Thus, this matter is ripe for consideration.

## A.    Relevant Hearing Testimony

Plaintiff was 44 years old at the time of the hearing. (Tr. 49, PAGEID #: 87). Plaintiff testified that she suffered from a variety of mental health issues, including depression and bipolar disorder. (Tr. 39-41, PAGEID #: 77–79). According to Plaintiff's testimony, a number of triggers exacerbate her mental health issues, including large crowds, exposure to cameras and other media-recording devices, being in public, and being around men with whom she is not familiar. (Tr. 46–47, PAGEID #: 84–85; Tr. 54–55, PAGEID #: 92–99). As a result of her medications, Plaintiff reported experiencing a number of side effects including dizziness, lethargy, and aggression. (Tr. 47, PAGEID #: 85). She also testified that she experienced vivid nightmares and flashbacks as a result of her medications. (Tr. 53, PAGEID # 91). She testified that she did not drive a car because of the dizziness she experienced as a result of her medications. (*Id.*). According to Plaintiff, she occasionally watches a couple of her great nephews and performs small tasks around the house for family members. (Tr. 54–55, PAGEID #: 92–93).

For several years prior to the hearing, Plaintiff participated in mental health therapy twice a month. (Tr. 43–44, PAGEID #: 81–82). Each session lasted approximately an hour. (Tr. 45, PAGEID #: 83). Plaintiff testified that, in approximately February 2017, she began attending therapy once a week (Tr. 47–48, PAGEID #: 85–86), and she attended appointments with a Certified Professional Nurse every other month to manage her treatment for her various health issues. (Tr. 54, PAGEID #: 92).

Vocational Expert Mary Eberts (the "VE") testified as an impartial witness (Tr. 71, PAGEID #: 109). The ALJ asked the VE to identify any work for a hypothetical individual of Plaintiff's age, education, and residual functional capacity ("RFC") with no relevant work history. (Tr. 71–72, PAGEID #: 109–10). The ALJ also included a number of limitations in his

hypothetical, including:

- Simple routine tasks that require little or no judgment;

- Skills that can be learned in no more than 30 days;

- An environment with no high production quotas;

- Only occasional interaction with the public, co-workers, and supervisors; and

- No driving.

(*Id.*).  The VE testified that the individual could perform medium, unskilled jobs, such as packer (150,000 jobs in the national economy), store laborer (103,000 jobs in the national economy), and janitor (1.8 million jobs in the national economy).  (Tr. 72, PAGEID #: 110).  Those occupations would still be available even if the ALJ required no public interaction.  (*Id.*).

The ALJ then modified the hypothetical and asked the VE to identify any work for a hypothetical individual of Plaintiff's age, education, and ability to do light work with no relevant work history and the same limitations identified above.  (*Id.*).  The VE testified that the individual could perform light, unskilled jobs, such as sorter (70,000 jobs in the national economy), inspector packer (117,000 jobs in the national economy), and laundry folder (70,000 jobs in the national economy).  (Tr. 72–73, PAGEID #: 110–11).  Those occupations would still be available even if the ALJ required no public interaction.  (Tr. 73–74, PAGEID #: 111–12).

On cross-examination, the VE stated that if an employee has difficulty with a supervisor during the probationary period, it would not be uncommon for that employee to be let go.  (Tr. 76, PAGEID #: 114).

## B.    Relevant Medical Evidence

Plaintiff's argument concerns her mental impairments only, and, consequently, the Court examines the relevant medical evidence pertaining to the same.

Plaintiff's medical records from 2014 to 2016 show medication management and counseling services for anxiety, depression, and bipolar disorder.  (Tr. 329–491, PAGEID #: 367–

529).  In March 2014, she underwent an Adult Diagnostic Assessment at the Woodlands Serving Central Ohio, Inc.  (Tr. 394–96, PAGEID #: 432–34).  During this assessment, Plaintiff reported an extensive history of mental health issues resulting from childhood sexual abuse and an abusive marriage.  (Tr. 394, PAGEID #: 432).  She stated that she was "somewhat limited in her ability to get out of the house," and that entire days could be consumed by her depression.  (*Id.*).  The clinician conducting the assessment diagnosed Plaintiff with PTSD and Bipolar Disorder and found that Plaintiff's global assessment of function (GAF) score was a 45.  (Tr. 395–96, PAGEID #: 433–34).

In November 2014, Plaintiff's therapist, Lisa Simon, completed a Daily Activities Questionnaire on behalf of Plaintiff.  (Tr. 320–21, PAGEID #: 358–59).  She noted that Plaintiff exhibited depressive symptoms, including poor stress tolerance, mood swings, isolation, and withdrawal.  (Tr. 320, PAGEID #: 358).  Ms. Simon further indicated that Plaintiff lived with her husband, was capable of independent living, had no problem getting along with family, friends, and neighbors, and had no problems with activities of daily living.  (Tr. 320–21, PAGEID #: 358–59).

February 2015 treatment notes reflect that Plaintiff's "most pressing concern" was dealing with "triggers," particularly her fear of men, which made going out difficult and had previously interfered with her employment.  (Tr. 333, PAGEID #: 371).  In March 2016, Plaintiff reported that she continued to "experience significant stressors that impact her mental health, and at times exacerbate trauma related symptoms."  (Tr. 370, PAGEID #: 408).  Throughout this period, Plaintiff consistently reported feelings of depression and anxiety.  (*See generally* Tr. 329–98, PAGEID #: 367–436).

To alleviate the symptoms of depression and anxiety, Plaintiff consistently attended medication management appointments with Darren Burgin, CNP, at Licking Memorial Health Professionals.  (Tr. 400–91, PAGEID #: 438–529).  In April 2016, Plaintiff took a number of medications, including clonazepam, Effexor, quetiapine fumarate, benztropine mesylate, and

Seroquel to address these symptoms. (Tr. 401, PAGEID #: 439). Plaintiff stated that she was feeling much better overall after some initial difficulties adjusting to her new medications. (Tr. 403, PAGEID #: 441).

Dr. Kevin Edwards, a clinical psychologist, completed a psychological evaluation of Plaintiff in December 2014 to gather information regarding her eligibility for SSI. (Tr. 322–27, PAGEID #: 360–65). Plaintiff informed him that she could complete activities of daily living, including taking care of the dog, performing personal hygiene, performing household chores, managing her finances, driving, using a computer, and visiting her adult children. (Tr. 323, PAGEID #: 361). For enjoyment, she reported listening to books on tape, knitting, and crocheting. (*Id.*).

Dr. Edwards noted that Plaintiff's "mood was depressed" and that "[h]er affect was anxious and constricted." (Tr. 324, PAGEID #: 362). Plaintiff reported experiencing crying episodes and feelings of aggression and frustration. (*Id.*). She also expressed feelings of hopelessness. (*Id.*). Dr. Edwards diagnosed Plaintiff with Major Depressive Disorder, Unspecified Anxiety Disorder, Other Specified Personality Disorder (Borderline traits), and moderate psychosocial impairment. *Id.* He then offered an assessment of psychological functioning independent of any physical conditions, impairments, or limitation. (Tr. 325–26, PAGEID #: 363–64). Relevant here, he found:

> The claimant had no reported history of difficulties with the law, but considerable problems with coworkers, supervisors, family, and friends. She was appropriate with me, however, as well as readily followed [sic] all direction I gave. She had good social skills. Depression could cause isolation and intolerance of social situations, however. Personality disorder would be predictive of intense and unstable relationships. It is likely she will eventually encounter contentious relationships with supervisors and coworkers.

(Tr. 325, PAGEID #: 325).

## C. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since applying

for SSI on August 20, 2014. (Tr. 15, PAGEID #: 53). The ALJ determined that Plaintiff suffered from the following severe impairments: trochanteric bursitis, lumbago with sciatica, mood disorder, posttraumatic stress disorder, and polysubstance dependence. (*Id.*). Additionally, the ALJ determined that Plaintiff suffered from non-severe impairments, including borderline intellectual functioning and esophageal reflux disease. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 15–18, PAGEID #: 53–56).

Specifically, the ALJ concluded that Plaintiff's mental symptomatology did not result in at least two limitations or one extreme limitation in the areas of activities of daily living, social functioning, concentration/persistence/pace, or episodes of decompensation as required in "paragraph B" of Listing 12.04, Listing 12.06, or Listing 12.08. (Tr. 16, PAGEID #: 54). Rather, the ALJ found Plaintiff had moderate limitations in her ability to understand, remember, or apply information; moderate difficulties interacting with others; moderate limitations with regard to concentrating, persisting, or maintaining pace; and moderate limitations in her ability to adapt or manage herself. (Tr. 16–17, PAGEID #: 54–55). Thus, the ALJ held that Plaintiff did not satisfy the "paragraph B" criteria. (Tr. 18, PAGEID #: 56). Similarly, the ALJ concluded that Plaintiff did not satisfy the "paragraph C" criteria. (*Id.*).

As to Plaintiff's RFC, the ALJ opined:

> The claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 416.967(c). Specifically, the claimant can perform simple routine tasks that require little or no judgment, and skills that can be learned in no more than thirty days as stated in the *Dictionary of Occupational Titles* (DOT) equating to a specific vocational preparation level of two (SVP2), in environments with no high production quotas, such as needed on an assembly line, with no public interactions, and occasional interaction with coworkers, supervisors, and the general public.

(*Id.*). After consideration of the evidence, however, the ALJ found that Plaintiff's "statements

concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 25, PAGEID #: 63). The ALJ elaborated on how he reached that finding:

> [T]he claimant has required only outpatient treatment for her mental health issues and even reported improvements in her mood, anxiety, and depression with the ongoing use of psychotropic medications. Furthermore, the medical records show that claimant has not required inpatient hospitalizations, placement in a more secure environment, or even extensive outpatient supportive services to maintain independent living or to access resources in the community. . . . Moreover, the claimant admitted at the hearing that she is able to care for herself, do basic chores around the house, operate a motor vehicle, and even shop independently despite her impairments.

(Tr. 25–26, PAGEID #: 63–64).

Relevant here, the ALJ gave "great weight" to the opinion of psychological consultative examiner, Dr. Edwards. (Tr. 23, PAGEID #: 61). Among other things, the ALJ noted Dr. Edwards' opinion that Plaintiff would likely encounter "contentious relationships with supervisors and coworkers" as a result of her depression and personality disorder. (*Id.*). To support the conclusion that Dr. Edwards' opinion was entitled to great weight, the ALJ emphasized that it was consistent with Plaintiff's treatment notes, the opinions of State agency consultative psychologists, and the Plaintiff's statements in her adult disability reports and testimony. (*Id.*).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health &*

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also

be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To

this end, the Court must "take into account whatever in the record fairly detracts from [the] weight"

of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL

4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

Plaintiff sets forth just one error. (Doc. 11). She argues that, while the ALJ gave Dr.

Edwards' opinion great weight, he failed to incorporate into his RFC analysis Dr. Edwards'

conclusion that Plaintiff was likely to have contentious relationships with supervisors and

coworkers. (*Id.* at 5–8). In her view, this failure was significant because the VE testified that it

would not be uncommon for a probationary employee who had difficulty with a supervisor to be

fired. (*Id.* at 7–8). Plaintiff concedes that the ALJ was not required to adopt Dr. Edwards' opinion,

but emphasizes that "the ALJ should have expressed why the opinion was being omitted" and

argues that his failure to explain its omission made the decision "unreviewable." (*Id.*).

Defendant offers a series of arguments in response: (1) Dr. Edwards' statement regarding

the potential for Plaintiff to have contentious relationships with supervisors and coworkers "was

speculative and vague," (Doc. 12 at 5); (2) an RFC determination is a legal, rather than medical,

decision that the ALJ alone is responsible for, (*id.*); and (3) the ALJ did not adopt Dr. Edwards'

opinion as the RFC finding, and the ALJ was not obligated to adopt Dr. Edwards' opinion in full,

(*id.* at 6–7).

"The Social Security Administration defines three types of medical sources: non-

examining sources, non-treating (but examining) sources, and treating sources." *Reeves v.*

*Comm'r of Soc. Sec.*, 618 F. App'x 267, 273 (6th Cir. 2015) (citing 20 C.F.R. § 404.1502; *Ealy v.*

*Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010)).  A physician qualifies as a treating source if there is an "ongoing treatment relationship" such that the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  To the extent an ALJ discounts a treating physician's opinion, he or she is "procedurally required to give 'good reasons' for discounting treating physicians' opinions, which are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Reeves*, 618 F. App'x at 273 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)).  Significantly, "this requirement only applies to *treating* sources."  *Ealy*, 594 F.3d at 514 (citation omitted).

The Sixth Circuit's decision in *Martin v. Commissioner of Social Security* illustrates the application of this principle to facts similar to those here.  658 F. App'x 255 (6th Cir. 2016), *reh'g denied* (Sept. 20, 2016).  There, the plaintiff argued "that the ALJ failed to explain why certain aspects of two opinions by non-treating sources were omitted from his RFC."  *Id.* at 259.  The Court explicitly rejected this argument:

> Martin protests the ALJ's lack of explanation as to why Martin's marked impairment in interacting with the general public—as found by Dr. Joslin—and his moderate to marked impairment in his ability to sustain concentration—as found by Dr. Rutledge—were not explicitly incorporated into Martin's RFC. But because Dr. Rutledge and Dr. Joslin are non-treating sources, *the reasons-giving requirement is inapplicable to their opinions*.

*Id.* at 259 (emphasis added) (citing *Reeves*, 618 F. App'x at 273; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)).

Plaintiff's similar argument fares no better here.  As the Plaintiff recognizes (Doc. 11 at 7), the ALJ was under no obligation to adopt Dr. Edwards' opinion in full.  *See Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)

("[E]ven where an ALJ provides 'great weight' to an opinion, an ALJ is not necessarily required to adopt wholesale limitations contained therein."). Nor, as the case law above makes clear, was the ALJ required to explain why he did not adopt Dr. Edwards' opinion in full. *See, e.g.*, *Martin*, 658 F. App'x 259. Dr. Edwards was a non-treating source, and the ALJ evaluated his opinion accordingly.

Contrary to Plaintiff's argument that the ALJ erred by failing to credit Dr. Edwards' opinion regarding her ability to interact with supervisors and coworkers, the undersigned finds substantial evidence to support the ALJ's decision. The ALJ considered Plaintiff's allegations that she was unable to socialize and contrasted those allegations with Plaintiff's activities of daily living, finding that "the claimant is able to shop independently, maintain some relationships in the community, get along well with family members, and attend doctor's appointments independently." (Tr. 16–17, PAGEID #: 54–55). As a result, the ALJ concluded that Plaintiff had "no more than moderate limitations in interacting well with others." (*Id.*).

Plaintiff's treatment records and the relevant opinion evidence support this conclusion. The ALJ noted that Plaintiff had an "adequate" or "positive" response to psychotropic medications and that by March 2016, Plaintiff reported feeling "fairly stable" as a result of medication and mental health therapy. (Tr. 20, PAGEID #: 58). Similarly, between March 2014 and March 2016, Plaintiff's GAF score improved from 55 (reflecting serious symptoms) to 60 (reflecting moderate symptoms). (*Id.*). Further, a January 2017 mental status examination showed Plaintiff "had grossly intact memory functions, insight, judgment, and impulse control despite her historical impairments." (*Id.*).

The ALJ considered the opinion evidence of Dr. Edwards, Ms. Simon, and two State agency psychologists. (Tr. 23–26, PAGEID #: 61–64). Significantly, none of these individuals

found that Plaintiff had anything more than moderate limitations in her ability to interact with the general public, supervisors, and coworkers. (*See id.*). Dr. Edwards found that Plaintiff had "good social skills." (Tr. 325, PAGEID #: 363). And although he found it "likely" that Plaintiff would "eventually encounter contentious relationships with supervisors and coworkers," he offered no opinion as to the type of work environment that Plaintiff would be capable of working in. (*See* Tr. 325–26, PAGEID #: 363–64). The State agency psychologists, Dr. Rivera and Dr. Fernandez, both opined that Plaintiff was "[m]oderately limited" in her ability to interact with supervisors and coworkers and was capable of superficial interaction with them. (Tr. 111, PAGEID #: 149; Tr. 124, PAGEID #: 162).

Ultimately, the ALJ limited Plaintiff's residual functional capacity to occasional interaction with coworkers, supervisors, and the general public. (Tr. 18, PAGEID #: 56). Contrary to Plaintiff's argument, this was not erroneous. *See, e.g.*, *Chapman v. Comm'r of Soc. Sec.*, No. 2:18-CV-258, 2018 WL 4292154, at *7 (S.D. Ohio Sept. 10, 2018) (collecting cases) (finding that the record supported an RFC limiting plaintiff to occasional interactions with coworkers and supervisors based on plaintiff's activities of daily living, including, among other things, caring for herself and family members, interacting with various medical and legal actors, socializing with her children); *Lang v. Comm'r of Soc. Sec.*, No. 1:17-cv-503, 2018 WL 3675508, at *4–7 (S.D. Ohio Aug. 2, 2018) (rejecting plaintiff's argument that the ALJ erred in limiting plaintiff's workplace environment to "occasional" contact with coworkers rather than complete elimination of any social interactions—noting plaintiff's ability to raise children as a single parent, interact with family members, grocery shop, and attend her children's events); *Keressi v. Comm'r of Soc. Sec.*, No. 15-12675, 2016 WL 4154948, at *11 (E.D. Mich. May 20, 2016), *report and recommendation adopted*, No. 15-12675, 2016 WL 4138232 (E.D. Mich. Aug. 4, 2016) (finding that, contrary to

plaintiff's arguments, the record supported an RFC limiting plaintiff to "occasional" contact with coworkers rather than elimination of all interactions—citing plaintiff's ability to travel outside of the home, shop, and attend movies).  To conclude otherwise would require the Court to reweigh the evidence and substitute its judgment for that of the ALJ.  The law prohibits this Court from doing so.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *see also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (noting that "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference").

In sum, substantial evidence supports the ALJ's RFC determination.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  October 11, 2018                         /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE